1  GREGORY P. STONE (State Bar No. 78329)
   Email: Gregory.Stone@mto.com
2  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, Thirty-Fifth Floor
3  Los Angeles, CA 90071-1560
   Telephone:  (213) 683-9100
4  Facsimile:  (213) 687-3702

5  ROSEMARIE T. RING (State Bar No. 220769)
   Email: Rose.Ring@mto.com
6  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
7  San Francisco, CA 94105-2907
   Telephone:  (415) 512-4000
8  Facsimile:  (415) 512-4077

9  Attorneys for Defendants
   MICROSOFT CORPORATION and
10 BUNGIE, LLC

11

12                    UNITED STATES DISTRICT COURT

13                   SOUTHERN DISTRICT OF CALIFORNIA

14

| 15 | RANDY NUNEZ, on Behalf of Himself, and All Others Similarly Situated, | CV NO. 07cv2209-L (WMC) |
|---|---|---|
| 16 | | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT UNDER RULE 12(b)(6) AND RULE 9(b) |
| 17 | Plaintiffs, | |
| 18 | vs. | |
| 19 | MICROSOFT CORPORATION, a Washington corporation, and BUNGIE, L.L.C., a Delaware Limited Liability Company, , | Judge:    Hon. M. James Lorenz<br>Location:  Courtroom 14<br>Date:      March 10, 2008<br>Time:      10:30 a.m. |
| 20 | | |
| 21 | Defendants. | |

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. SUMMARY OF ALLEGATIONS .................................................................................. 2

III. ARGUMENT .................................................................................................................... 3

    A. Plaintiff's UCL Claims Should Be Dismissed (Count 3) ...................................... 3

        1. Claims Based On Alleged Defects In Halo 3 Fail Because Breach Of An Implied Warranty Does Not Violate The UCL As A Matter Of Law ............................................................................................................ 3

        2. Claims Based On "Fraudulent" Conduct Fail Because They Do Not Satisfy The Pleading Requirements Of Rule 9(b) And Rely On Supposed Misrepresentations That Are Not "Likely To Deceive" Reasonable Consumers As A Matter Of Law ............................................ 5

            a. The Supposed "Fraudulent" Conduct Is Not Pled With Particularity As Rule 9(b) Requires ................................................. 5

            b. The Alleged Misrepresentations Are Not Actionable Because They Are Not "Likely To Deceive" Reasonable Consumers As A Matter Of Law ........................................................ 7

    B. Plaintiff's Warranty Claims Should Be Dismissed (Counts 1 And 2) .................. 10

        1. Plaintiff Does Not Allege That He Gave Timely Notice Of The Alleged Breach As Required To State A Claim For Breach Of Warranty ................................................................................................... 10

        2. Plaintiff's Claim For Breach Of The Implied Warranty Of Fitness For A Particular Purpose Fails Because He Does Not Allege A "Particular Purpose" For Which He Intended To Use Halo 3, Or That He Purchased Halo 3 Directly From Defendants .............................. 11

IV. CONCLUSION ............................................................................................................... 12

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Andrade v. Pangborn Corp.*,
  No. C 02-3771, 2004 WL 2480708, at *23 (N.D. Cal. Oct. 22, 2004) ............................. 10, 11

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ......................................................................................... 6

*Brothers v. Hewlett-Packard Co.*,
  No. C-06-02254, 2006 WL 3093685, at *6 (N.D. Cal. Oct. 31, 2006) ............................. 7, 9

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990) ........................................................................................... 7

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ........................................................................................... 7, 8

*Haskell v. Time, Inc.*,
  857 F. Supp. 1392 (E. D. Cal. 1994) .............................................................................. 7, 9

*In re Glenfed*,
  42 F.3d 1541 (9th Cir. 1994) ........................................................................................... 6

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ........................................................................................... 5, 6

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ............................................................................................... 6

*Rolo v. City Investing Co. Liquidating Trust*,
  155 F.3d 644 (3d Cir. 1998) ............................................................................................ 6

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985 ............................................................................................ 7

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ......................................................................................... 5, 6

## STATE CASES

*Am. Suzuki Motor Corp. v. Superior Court*,
  37 Cal. App. 4th 1291 (1995) .......................................................................................... 11

*Bardin v Daimlerchrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) ........................................................................................ 8

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
  35 Cal. 3d 197 (1983) ..................................................................................................... 7

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) .......................................................................................... 8

*Gregory v. Albertson's, Inc.*,
  104 Cal. App. 4th 845 (2002) .......................................................................................... 4

*Gottsdanker v. Cutter Labs.*,
  182 Cal. App. 2d 602 (1960) ........................................................................................... 12

*Klein v. Earth Elements, Inc.*,
  59 Cal. App. 4th 965 (1997) ............................................................................................ 3, 4, 9

# TABLE OF AUTHORITIES
## (continued)

Page

*Pollard v. Saxe & Yolles Dev. Co.*,
   12 Cal. 3d 374 (1974) ................................................................................................ 10

*Schnall v. Hertz Corp.*,
   78 Cal. App. 4th 1144 (2000) ..................................................................................... 4

*Vogel v. Thrifty Drug Co.*,
   43 Cal. 2d 184 (1954) ................................................................................................ 10

## FEDERAL RULES

Fed. R. Civ. P. 9(b) ........................................................................................................ 3, 5

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 ................................................................................... 1, 4
Cal. Civ. Code § 1791.1(b) .......................................................................................... 1, 11
Cal. Civ. Code. § 1792.1 ............................................................................................. 2, 12
Cal. Commercial Code § 2607(3)(A) ............................................................................. 10

## I. INTRODUCTION

Plaintiff alleges that he purchased a video game called *Halo 3*, which he asserts was designed and manufactured by Defendants Microsoft Corporation ("Microsoft") and Bungie, LLC ("Bungie"), that "repeatedly locked up, froze, and/or crashed" when he attempted to play it. Rather than returning the game to the retailer where he purchased it for an exchange or refund, or contacting Microsoft to obtain the same relief available to him under Microsoft's express warranty, Plaintiff chose to file this class action lawsuit seeking "restitutionary disgorgement" of all *Halo 3* revenues based on nothing more than the alleged breach of an implied warranty and supposed misrepresentations which he claims mislead consumers to believe that *Halo 3* will never malfunction in any way. On this basis, Plaintiff asserts claims for violations of (1) California's Unfair Competition Law ("Unfair Competition Law" or "UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and (2) the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code §§ 1790, *et seq.* Plaintiffs' claims should be dismissed because California's consumer protection laws cannot be distorted in this way.

Plaintiff's UCL claims should be dismissed because he does not allege any conduct by Microsoft or Bungie that constitutes an "unlawful, fraudulent, or unfair" business practice. California law is clear that a mere breach of an implied warranty does not amount to a violation of the UCL. Plaintiff's allegations that Defendants engaged in "fraudulent" conduct are likewise insufficient to state a claim under the UCL for two reasons. *First*, such claims are not pled with particularity as Federal Rule of Civil Procedure 9(b) requires. *Second*, the alleged misrepresentations are not actionable because, as a matter of law, they are not "likely to deceive" reasonable consumers. No reasonable consumer would construe statements on *Halo 3* packaging that it is "[o]nly on Xbox 360" and "for exclusive use on the Xbox 360," Compl. ¶ 25, as representing that *Halo 3* will never lock up, freeze, crash or otherwise malfunction in any way. Under any reasonable construction, these statements simply inform prospective purchasers that *Halo 3* can be played "only" and "exclusively" on Xbox 360 consoles and not on other video game consoles, such as Sony PlayStation or Nintendo Wii. Nor does Plaintiff's allegation that Defendants failed to disclose that *Halo 3* supposedly "freezes, locks up and/or crashes," Compl.

¶¶ 27, 65, amount to a violation of the UCL because Plaintiff does not allege facts showing that Defendants knew of the supposed defect at the time of his purchase or that this purported omission was "likely to deceive" reasonable consumers.

Plaintiff's breach of warranty claims should also be dismissed because he does not allege that he gave timely notice of the alleged breach to Defendants, as required to state a breach of warranty claim under California law. Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose should be dismissed for two additional reasons. *First*, Plaintiff fails to allege that Microsoft or Bungie knew or had reason to know of any "particular purpose" for which he intended to use *Halo 3* that is different from the "ordinary purpose" for which this game is used. *Second*, Plaintiff does not allege—nor can he—that he purchased his copy of *Halo 3* directly from either defendant. The statute upon which Plaintiff bases his claim makes clear that manufacturers make the implied warranty of fitness for a particular purpose only where the product is "sold at retail in this state *by a manufacturer*." Cal. Civ. Code. § 1792.1 (emphasis added). Here, Plaintiff concedes he purchased his game from someone other than Defendants.

## II.   SUMMARY OF ALLEGATIONS

The facts alleged in the Complaint, assumed to be true for the purpose of this motion only, are as follows:

On September 25, 2007, Microsoft released *Halo 3*, a video game designed and manufactured by Microsoft and Bungie for exclusive use on the Xbox 360 video game console. Compl. ¶ 23. Plaintiff purchased a copy of *Halo 3* "on or around the middle of October, 2007" from GameStop, a video game retail store in San Diego, California. Compl. ¶ 30. According to Plaintiff, his copy of *Halo 3* "repeatedly locked up, froze and/or crashed while being operated on [his] Xbox 360 game console." Compl. ¶ 33. Plaintiff alleges that Defendants misrepresented *Halo 3* by stating on packaging that *Halo 3* was "[o]nly on Xbox 360" and "for exclusive use on the Xbox 360," Compl. ¶¶ 1, 25, while failing to disclose that it "freezes, locks up and/or crashes" when used on the Xbox 360 console, Compl. ¶ 65. Plaintiff further alleges that Defendants "knew, recklessly disregarded, or should have known" that these representations "were untrue and/or misleading." Compl. ¶ 67.

Conspicuously absent from the Complaint are any allegations acknowledging that Microsoft offers a 90-day express warranty for *Halo 3* and that, under that warranty, Plaintiff is entitled to a repair or replacement of his video game, or a refund. Plaintiff does not allege that either GameStop or Defendants refused to repair or replace his video game. Nor does he allege that either GameStop or Defendants refused to refund his money. Instead, Plaintiff chose to file this class action lawsuit seeking "replacement and reimbursement" on November 7, 2007, only weeks after purchasing *Halo 3* and with over two months remaining on a warranty that provides the same relief. Compl. ¶¶ 55, 61, 71.

## III. ARGUMENT

### A. Plaintiff's UCL Claims Should Be Dismissed (Count 3).

Plaintiff alleges that Defendants violated the UCL by distributing an unmerchantable product and by misrepresenting it to the public. Plaintiff fails to state a claim based on either type of alleged misconduct. California law is clear that merely distributing an allegedly "defective" product does not amount to a UCL violation. Plaintiff's claims based on supposed misrepresentations likewise fail for two reasons. *First*, such claims are not pled with particularity as Rule 9(b) requires. *Second*, the alleged misrepresentations are not actionable under the UCL because, as a matter of law, they are not "likely to deceive" consumers.

#### 1. Claims Based On Alleged Defects In *Halo 3* Fail Because Breach Of An Implied Warranty Does Not Violate The UCL As A Matter Of Law.

Under California law, mere breach of an implied warranty does not constitute the type of "deceptive or sharp" practice for which liability may be imposed under the UCL. In *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965 (1997), the plaintiff asserted UCL claims based on allegations that Earth Elements distributed contaminated pet food that made pets sick after eating it. The California Court of Appeal affirmed the trial court's holding that such allegations did not support claims that Earth Elements engaged in "any prohibited conduct under the [UCL]—whether unlawful, unfair, or deceptive." *Id.* at 969. The court first disposed of the plaintiff's claims under the "unlawful" prong of the UCL:

> It is Klein's theory that liability imposed under the doctrines of "strict products liability and . . . breach of the implied warranty of fitness" will support an independent action under the "unlawful" prong of section 17200. . . . While these doctrines do provide for civil liability upon proof of their elements they do not, by themselves, describe acts or practices that are illegal or otherwise forbidden by law.

*Id.* (emphasis added). Turning to the "unfair" prong, the court held that the unintentional distribution of an unmerchantable product "d[id] not fit the 'unfairness' bill." *Id.* at 970. "To set the standard at perfection or no mistakes is too high a price to pay for eliminating the potential harm to the dogs from the unwitting distribution of contaminated food." *Id.* Finally, the court rejected the plaintiff's claim under the "fraudulent" prong of the UCL because "[t]he public is not likely to be deceived by Earth Element's unintentional distribution of unmerchantable pet food." *Id.*

Here, as in *Klein*, Plaintiff does not allege that the supposed breach of warranty was intentional, or that Defendants refused to provide remedies to consumers who allegedly received unmerchantable copies of *Halo 3*. Indeed, Plaintiff does not allege that he even sought remedies available to him from the retailer and under Microsoft's express warranty.

Plaintiff's claim that Defendants violated the "unfair" prong of the UCL fails for the separate reason that he specifies no legislative policy that Defendants supposedly violated. To maintain a cause of action under the "unfair" prong of the UCL, a plaintiff must specify a legislative policy that the defendant allegedly violated. *See Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166 (2000) ("claims of unfairness under the UCL should be defined in connection with a legislatively declared policy. . . .") (emphasis in original); *see also Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002). Plaintiff's conclusory allegation that Defendants' conduct "offend[s] public policy" does not allege facts sufficient to state a claim for "unfair" practices under the UCL. Compl. ¶ 66.

2.  **Claims Based On "Fraudulent" Conduct Fail Because They Do Not Satisfy The Pleading Requirements Of Rule 9(b) And Rely On Supposed Misrepresentations That Are Not "Likely To Deceive" Reasonable Consumers As A Matter Of Law.**

Plaintiff purports to state a claim under the UCL on grounds that Defendants engaged in "fraudulent" business acts or practices. Specifically, Plaintiff alleges that "Defendants' acts, omissions, misrepresentations, practices and non-disclosures, as alleged herein, also constitute 'fraudulent' business acts or practices within the meaning of" the UCL. Compl. ¶ 67. Other than the "act or practice" of unintentionally distributing an unmerchantable product, which does not violate the UCL for reasons set forth above, the only conduct alleged in the complaint is that Defendants misrepresented *Halo 3* by (1) stating on product packaging that *Halo 3* is "[o]nly on Xbox 360" and "for exclusive use on the Xbox 360 in the NTSC format," Compl. ¶ 25, and (2) failing to disclose that *Halo 3* supposedly "freezes, locks up and/or crashes when it is utilized in its intended use on Defendant Microsoft's Xbox 360 video game console," Compl. ¶ 65. Plaintiff's claims for violation of the "fraudulent" prong of the UCL fail for two reasons. *First*, they are not pled with particularity as Rule 9(b) requires. *Second*, the alleged misrepresentations are not actionable because, as a matter of law, they are not "likely to deceive" reasonable consumers.

  a.  **The Supposed "Fraudulent" Conduct Is Not Pled With Particularity As Rule 9(b) Requires.**

Plaintiff's UCL claim should be dismissed to the extent it is based on allegedly fraudulent conduct because the Complaint fails to meet the heightened pleading requirements of Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("[I]f particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim.").

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This is not a mere technical requirement but one that serves important purposes:

> Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

*Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (*quoting In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)).

Accordingly, the Ninth Circuit rigorously enforces the Rule 9(b) requirements, including in cases brought under the UCL. *See, e.g., Vess*, 317 F.3d at 1103-06 (claims which "sound in fraud," including UCL claims, must satisfy Rule 9(b); allegation of conspiracy without "the particulars of when, where, or how the alleged conspiracy occurred" is insufficient); *Bly-Magee*, 236 F.3d at 1018 (broad allegation that defendant "concealed the fraudulent submission of false claims . . . to avoid repayment of funds" insufficient under Rule 9(b)); *In re Stac Elecs.*, 89 F.3d at 1410-11 (allegation that defendants "schemed . . . to project false reports" insufficient under Rule 9(b)).

To meet the Rule 9(b) requirements, a plaintiff must, at a minimum, specify the "time, place, and content" of the alleged fraudulent misrepresentation or omission. *In re Glenfed*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc); *In re Stac*, 89 F.3d at 1404. In other words, Plaintiff must set forth "the who, what, when, where, and how" of the misconduct alleged. *Vess*, 317 F.3d at 1106 (citation omitted). Even such details are insufficient, however; Plaintiff must also "set forth an explanation as to why the statement or omission complained of was . . . false or misleading when made." *In re Stac*, 89 F.3d at 1404. Defendants are entitled to know the "precise misconduct" with which they are charged "so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee*, 236 F.3d at 1018-19 (*quoting Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) and *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).

Here, Plaintiff's allegations of fraudulent conduct are insufficient. Rather than state the particulars of the allegedly fraudulent conduct, Plaintiff simply refers to the "Defendants' acts,

omissions, misrepresentations, practices and non-disclosures, as alleged herein," Compl. ¶ 67, and alleges that they "also constitute 'fraudulent' business acts or practices." *Id.* These allegations fall woefully short of the specificity required. *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (conclusory allegations of fraud and conspiracy with no specification of "times, dates, places or other details," insufficient under Rule 9(b)).

With respect to the alleged misrepresentations, Rule 9(b) requires that Plaintiff allege facts showing that Defendants knew of the supposed defect in *Halo 3* at the time of his purchase. *See Brothers v. Hewlett-Packard Co.*, No. C-06-02254, 2006 WL 3093685, at *6 (N.D. Cal. Oct. 31, 2006) (dismissing UCL claims based upon failure to disclose an alleged defect in laptop computers where "plaintiff allege[d] no *contemporaneous facts* that [defendant manufacturer] knew about the alleged defects when plaintiff . . . purchased [his laptop]") (emphasis added). Here, Plaintiff alleges no "contemporaneous facts" to make this showing. Instead, he makes the conclusory allegation that "Defendants either knew, recklessly disregarded, or should have known their product representations were untrue and/or misleading." Compl. ¶ 67. As in *Brothers*, this allegation is insufficient to state a claim under the UCL based on alleged misrepresentations.

            b.      The Alleged Misrepresentations Are Not Actionable Because They Are Not "Likely To Deceive" Reasonable Consumers As A Matter Of Law.

Misrepresentation claims under the UCL require a showing that the alleged false statements or omissions upon which they are based are "likely to deceive" reasonable consumers. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (misrepresentation claims under UCL require a showing that "members of the public are likely to be deceived"); *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E. D. Cal. 1994) (same); *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983) (same). Because the "reasonable consumer" inquiry is an objective standard, claims may be dismissed as a matter of law where the alleged statement "in context, is such that no reasonable consumer could be misled" in the manner claimed by the plaintiff. *Haskell*, 857 F. Supp. at 1399 (dismissing claims based on statements that the court concluded could not be construed as alleged in the complaint); *Cook, Perkiss &*

1  *Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("District Courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and we can think of no sound reason why they should not do so.").

Likewise, claims based on omissions may be dismissed as a matter of law where the complaint does not allege facts showing that the alleged omission is "likely to deceive" reasonable consumers. *See Bardin v Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1274-76 (2006) (dismissing UCL claims based on failure to disclose an alleged defect because the plaintiff did not allege facts showing that consumers were "likely to be deceived" by the alleged omission); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006) (dismissing UCL claims based on failure to disclose an alleged defect where the plaintiff did not allege facts giving rise to a duty to disclose the alleged omission because "failure to disclose a fact one has no affirmative duty to disclose" cannot be deemed "'likely to deceive' anyone within the meaning of the UCL").

Plaintiff's claims based on affirmative misrepresentations should be dismissed because the alleged statements upon which they are based would not mislead reasonable consumers. Plaintiff alleges that statements on *Halo 3's* packaging that it is "[o]nly on Xbox 360" and "for exclusive use on the Xbox 360 in the NTSC format" are false and misleading because *Halo 3* supposedly "freezes, locks up and/or crashes" when played on the Xbox 360 console. Compl. ¶¶ 25, 65. These statements are not false or misleading because no reasonable consumer would construe them as representing that *Halo 3* would perform to a particular standard, let alone that it would never freeze, lock up, crash or otherwise malfunction in any way. As Plaintiff admits in the Complaint, *Halo 3* is "made and sold for *exclusive use* on Microsoft's video game console (the 'Xbox 360')." Compl. ¶ 1 (emphasis added). Likewise, other video games are made and sold for *exclusive use* on other video game consoles, such as Nintendo Wii, Sony PlayStation and Sega Dreamcast. Because some games are designed for exclusive use on particular consoles, while other games are made for use on more than one type of console, it is necessary to inform consumers which games can be played on which consoles. Statements that *Halo 3* is "[o]nly on

Xbox 360" and "for exclusive use on the Xbox 360" do exactly that, and only that. Therefore, these statements simply inform consumers of a fact that Plaintiff admits (repeatedly) is true. *See* Compl. ¶ 1 ("[Defendants] manufacture a 'first person' science fiction video game ('Halo 3') made and sold for exclusive use on Microsoft's video game console (the 'Xbox 360')"); Compl. ¶ 21 (*Halo 3* "is designed, manufactured, marketed, and sold by Defendants to be played exclusively on the Xbox 360 video game console"). Accordingly, Plaintiff's claims based on affirmative misrepresentations should be dismissed. *See Haskell*, 857 F. Supp. at 1399 (dismissing UCL claims "as a matter of law" where no reasonable consumer would construe alleged statements as the plaintiff claimed).

Plaintiff's claims based on omissions should be dismissed because the supposed omission—that *Halo 3* purportedly "freezes, locks up and/or crashes"—does not amount to a violation of the UCL for two reasons. *First*, as set forth above, Plaintiff does not allege facts showing that Defendants knew of the supposed defect at the time Plaintiff allegedly purchased his copy of *Halo 3*. Liability under the UCL cannot be predicated on the defendant's failure to disclose information it does not have. *See Brothers*, 2006 WL 3093685, at *6 (dismissing UCL claims based upon failure to disclose an alleged defect in laptop computers where "plaintiff allege[d] no contemporaneous facts that [defendant manufacturer] knew about the alleged defects when plaintiff . . . purchased [his laptop]"). *Second*, as the California Court of Appeal held in *Klein*, 59 Cal. App. 4th 965, consumers are not "likely to be deceived" because a product they purchase turns out to be defective:

> While the consumer buying "Nature's Recipe" would anticipate that the product was pet-edible, that same consumer would not be deceived when the food turned out to be contaminated. While we expect that food we buy will not be rotten or contaminated, we know that sometimes it is—this is a fact of life. As soon as a dog refused to eat or vomited, the customer would know something was wrong and, as we all have contemplated doing from time to time, might have returned the defective product to the store, contacted the manufacturer, etc.

*Id.* at 970. No manufacturer can guarantee that its products will never malfunction in any way. That is why they provide warranties under which they make available certain remedies to consumers who experience malfunctions. Consumers understand this and, therefore, are not

deceived when a product malfunctions—this is "a fact of life." As recognized in *Klein*, the reasonable course for a consumer to take when this occurs is to return the product to the retailer or contact the manufacturer to seek available remedies, not file a lawsuit accusing the manufacturer of "sharp and deceptive" practices. Although Plaintiff was clearly disappointed when his copy of *Halo 3* (allegedly) malfunctioned, he was not deceived. Rather than filing this lawsuit seeking "replacement and reimbursement" of the game, Plaintiff could have contacted Microsoft to obtain his remedy, which he remains free to do as of the date of this filing.

### B. Plaintiff's Warranty Claims Should Be Dismissed (Counts 1 And 2).

#### 1. Plaintiff Does Not Allege That He Gave Timely Notice Of The Alleged Breach As Required To State A Claim For Breach Of Warranty.

Plaintiff's claims for breach of the implied warranties of merchantability and fitness for a particular purpose fail because he has not alleged that he timely notified Defendants of the alleged breach, as required under section 2607(3)(A) of the California Commercial Code. The notice requirement "is based on a sound commercial rule designed to allow the defendant opportunity for repairing the defective item, reducing damages, avoiding defective products in the future, and negotiating settlements," and also "protects against stale claims." *Pollard v. Saxe & Yolles Dev. Co.*, 12 Cal. 3d 374, 380 (1974). Plaintiff could have resolved any problems he had with his allegedly defective copy of *Halo 3* simply by contacting Microsoft and requesting an exchange or refund under Microsoft's express warranty. Plaintiff's failure to allege that he even contacted Microsoft (or Bungie) when his game allegedly malfunctioned requires dismissal of his claims. *See, e.g., Andrade v. Pangborn Corp.*, No. C 02-3771, 2004 WL 2480708, at *23 (N.D. Cal. Oct. 22, 2004) (noting that a plaintiff must take steps to provide the defendant with notice to have a viable breach of implied warranty claim); *Vogel v. Thrifty Drug Co.*, 43 Cal. 2d 184, 187 (1954) ("[P]laintiff overlooks an element essential to stating a cause of action for breach of the implied warranty, i.e., an allegation that plaintiff gave notice of the breach to the defendant within a reasonable time.").

### 2. Plaintiff's Claim For Breach Of The Implied Warranty Of Fitness For A Particular Purpose Fails Because He Does Not Allege A "Particular Purpose" For Which He Intended To Use *Halo 3*, Or That He Purchased *Halo 3* Directly From Defendants.

Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose fails for two additional reasons. *First*, he does not allege any "particular purpose" for which he intended to use *Halo 3* that is different from its "ordinary use." *See* Cal. Civ. Code § 1791.1(b). "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used . . . go to uses which are customarily made of the goods in question." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295 n.2 (1995); *see also Andrade*, 2004 WL 2480708, at *25 (intervener-plaintiff did not prove breach of the implied warranty of fitness for a particular purpose where plaintiff did not offer any evidence that plaintiff-intervener intended to put machine to a specific use peculiar to the nature of its business).

Here, Plaintiff alleges that the "particular purpose" of *Halo 3* is for "being played on the Xbox 360" and "use on the Xbox 360." Compl. ¶¶ 6(b), 59. This claimed "particular purpose" is indistinct from the alleged "ordinary purpose" of *Halo 3*—"operating on the Xbox 360." Compl. ¶¶ 6(a), 52. Indeed, the fact that Plaintiff attempts to assert this claim on behalf of everyone in California who purchased the *Halo 3* video game underscores the flaw in his contention that this stated purpose is peculiar to a particular buyer. Accordingly, Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose should be dismissed because it is duplicative of his claim for breach of the implied warranty of merchantability. *See Am. Suzuki Motor Corp.*, 37 Cal. App. 4th at 1295 n.2 (1995) (dismissing "fitness" claims because the plaintiffs "failed to identify any legally cognizable 'particular purpose' for which they supposedly obtained their vehicles (other than the general purpose of providing transportation)").

*Second*, Plaintiff does not—and cannot—allege that he purchased *Halo 3* from Defendants and, therefore, cannot show that Defendants had reason to know of any "particular purpose" for which he intended to use *Halo 3* or that he relied on their skill or judgment to select or furnish a

product to meet that purpose. Under the Song-Beverly Act, the implied warranty of fitness for a particular purpose is implied as to manufacturers only where the product is "sold at retail in this state by a manufacturer." Cal. Civ. Code § 1792.1 (emphasis added). Thus, the plain language of the Act recognizes that a claim for breach of the implied warranty of fitness for a particular purpose is predicated on some direct communication between the buyer and seller about the buyer's particular purpose. *See Gottsdanker v. Cutter Labs.*, 182 Cal. App. 2d 602, 608 (1960) ( "[I]mplied warranties of fitness and of merchantability are enforceable only against a seller."). Here, Plaintiff concedes that he purchased *Halo 3* from GameStop, not Microsoft or Bungie. Compl. ¶ 30. Accordingly, he cannot state a claim for breach of the implied warranty of fitness for a particular purpose against either defendant.

## IV. CONCLUSION

For the reasons stated above, Microsoft and Bungie respectfully request that the Complaint, and claims alleged therein, be dismissed.

DATED: January 10, 2008                    MUNGER, TOLLES & OLSON, LLP


By:_____s/*Rosemarie T Ring*_____
ROSEMARIE T. RING
rose.ring@mto.com

Attorneys for Defendants
MICROSOFT CORPORATION and
BUNGIE, LLC