1  GREGORY P. STONE (State Bar No. 78329)
   Email: Gregory.Stone@mto.com
2  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, Thirty-Fifth Floor
3  Los Angeles, CA  90071-1560
   Telephone:     (213) 683-9100
4  Facsimile:      (213) 687-3702

5  ROSEMARIE T. RING (State Bar No. 220769)
   Email: Rose.Ring@mto.com
6  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
7  San Francisco, CA  94105-2907
   Telephone:     (415) 512-4000
8  Facsimile:      (415) 512-4077

9  Attorneys for Defendants
   MICROSOFT CORPORATION and
10 BUNGIE, L.L.C.

11
                    UNITED STATES DISTRICT COURT
12
                   SOUTHERN DISTRICT OF CALIFORNIA
13

14

15 RANDY NUNEZ, on Behalf of Himself,            CASE NO. 07 CV 2209 L (WMC)
   and All Others Similarly Situated,
16                                               **REPLY MEMORANDUM IN SUPPORT
              Plaintiffs,                        OF MOTION TO DISMISS COMPLAINT
17                                               UNDER RULE 12(b)(6) AND RULE 9(b)**
       vs.
18                                               Judge:     Hon. M. James Lorenz
   MICROSOFT CORPORATION, a                     Location:  Courtroom 14
19 Washington corporation, and BUNGIE,           Date:      March 10, 2008
   L.L.C., a Delaware Limited Liability          Time:      10:30 a.m.
20 Company, ,

21            Defendants.

22

23

24

25

26

27

28

4556141.1                                                           REPLY MEMORANDUM
                                                            CASE NO. 07 CV 2209 L (WMC)

## I. INTRODUCTION

As demonstrated in the opening brief, Plaintiff's Complaint should be dismissed because he does not allege conduct by Microsoft or Bungie that violates the UCL or facts showing that he is entitled to relief under the Song-Beverly Act.

Under clear and binding precedent, Plaintiff's allegations that Defendants distributed allegedly defective copies of the *Halo 3* video game and misrepresented *Halo 3* do not support claims under the UCL. In *Klein v. Earth Elements*, 59 Cal. App. 4th 965, 969-70 (1997), the California Court of Appeal held that distributing an allegedly defective product without knowledge of the alleged defect does not amount to an "unlawful, fraudulent, or unfair" business practice under the UCL. Plaintiff fails to allege any facts showing that Defendants knowingly distributed defective copies of *Halo 3* and, therefore, cannot state a claim under the UCL on this basis. Nor can Plaintiff state a claim under the UCL based on alleged misrepresentations. In *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003), the Ninth Circuit held that misrepresentation claims under the UCL are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) which, for misrepresentations regarding alleged product defects, requires Plaintiff to allege facts showing that Defendants knew of the alleged defect at the time of his purchase. Plaintiff alleges no such facts. Even assuming that the alleged misrepresentations were pled with particularity under Rule 9(b), they still would not support a UCL claim because, as a matter of law, none of the alleged misrepresentations are "likely to deceive" reasonable consumers.

California law is likewise clear that Plaintiff has not stated a claim for breach of implied warranties under the Song-Beverly Act. Song-Beverly incorporates rights and obligations created under California's Uniform Commercial Code ("UCC") and supersedes them only to the extent they are inconsistent with the Act's purpose of ensuring that consumers who purchase defective products have adequate remedies. Requiring consumers to give manufacturers timely notice of an alleged defect before filing suit to allow for a potential resolution short of litigation is wholly consistent with the Act's remedial goals. Likewise, requiring a "particular"

purpose that is distinct from the "ordinary" purpose of an allegedly defective product in order to state a claim for breach of the implied warranty of fitness for a *particular* purpose, and that the product be purchased directly from the manufacturer who is supposedly aware of and fails to provide a product that can be used for this *particular* purpose, is consistent with both the Act and common sense.

In his rush to file a class action lawsuit seeking the same remedies he could have obtained either by returning his copy of *Halo 3* to the retailer or seeking remedies available to him under Microsoft's 90-day express warranty, Plaintiff ignored the above precedent. In his opposition, he invites this Court to do the same. For reasons set forth in their opening brief and below, Microsoft and Bungie urge the Court to reject this invitation and dismiss the Complaint for failure to state a claim.

## II. ARGUMENT

### A. Plaintiff's UCL Claims Should Be Dismissed

Plaintiff attempts to assert UCL claims based on two types of alleged misconduct: (1) distributing copies of the *Halo 3* video game, which Plaintiff contends breach implied warranties under the Song-Beverly Act, and (2) misrepresenting *Halo 3* through statements on the game's packaging that it is "[o]nly on Xbox 360" and "for exclusive use on the Xbox 360 in the NTSC format" and failing to disclose that *Halo 3* supposedly "freezes, locks up and/or crashes" when it is used on the Xbox 360 video game console. Compl. ¶ 25, 65. Plaintiff fails to state a claim based on either type of alleged misconduct. Plaintiff's arguments to the contrary in his opposition either ignore or misstate controlling law.

#### 1. Breach of an Implied Warranty Does Violate The UCL As A Matter Of Law

Plaintiff argues that breach of an implied warranty under the Song-Beverly Act constitutes a "sufficient predicate" for claims under the UCL, relying solely on *Mocek v. Alpha Leisure, Inc.*, 114 Cal. App. 4th 402 (2003). Opp. at 7. *Mocek*, however, does not address whether breach of an implied warranty may form the basis of a claim under the UCL. Meanwhile, Plaintiff ignores *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965 (1997), a case in

1  which the California Court of Appeal squarely addressed this issue and held to the contrary.

2  In *Klein*, the court held that "[w]hile these doctrines [breach of implied warranties]
3  do provide for civil liability upon proof of their elements they do not, by themselves, describe
4  acts or practices that are illegal or otherwise forbidden by law." 59 Cal. App. 4th at 969. The
5  court likewise held that the unintentional sale of an allegedly defective product does not
6  constitute the type of "sharp or deceptive" practice for which claims may be brought under the
7  "unfair" or "fraudulent" prongs of the UCL. Plaintiff's attempt to avoid *Klein* by arguing that the
8  "unfair" prong in consumer cases is subject to the "traditional balancing test," as opposed to a
9  showing that the alleged misconduct is "tethered" to a specific legislative, constitutional, statutory
10 or regulatory provision, and that Rule 9(b) does not apply to claims under the "fraud" prong, is to
11 no avail. Opp. at 12. *Klein* applied the "traditional balancing test" to reject claims based on
12 breach of an implied warranty under the UCL's "unfair" prong. With respect to the "fraud"
13 prong, even assuming that Rule 9(b) does not require that claims arising out of an allegedly
14 defective product be pled with more particularity than Plaintiff employed, *Klein* also addresses
15 and rejects such claims holding that, while reasonable consumers anticipate that products they
16 purchase will not malfunction, they are not deceived when they do. *Id.* at 970.

**2. The Alleged Misrepresentations Are Not Actionable Because They Are Not Pled With Particularity As Rule 9(b) Requires And Are Not Likely To Deceive Reasonable Consumers As A Matter Of Law.**

19 Plaintiff argues that UCL claims based on alleged misrepresentations are not
20 subject to the heightened pleading requirements of Rule 9(b). Opp. at 8. Plaintiff misstates the
21 law. In *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-5 (9th Cir. 2003), the Ninth Circuit
22 held that, although fraud is not an essential element of the UCL, claims based on alleged
23 misrepresentations "sound in fraud" and, therefore, are subject to the heightened pleading
24 requirements of Rule 9(b). *See also Brothers v. Hewlett-Packard Co.*, No. C-06-02254 RMW,
25 2006 WL 3093685 at *6 (N.D. Cal. Oct. 31, 2006) ("The *Vess* court explicitly found that
26 allegations of false misrepresentations constituted allegations that sounded in fraud"). Here,
27 Plaintiff does not satisfy this standard because he alleges no facts showing that Defendants knew
28 of the alleged defect at the time of his purchase. *See Brothers*, 2006 WL 3093685, at *6

4556141.1     - 3 -     REPLY MEMORANDUM
CASE NO. 07 CV 2209 L (WMC)

1   (dismissing UCL claims based upon failure to disclose an alleged defect in laptop computers
2   where "plaintiff allege[d] no contemporaneous facts that [defendant] knew about the alleged
3   defects when plaintiff . . . purchased [his laptop]").

4         As demonstrated in the opening brief, Plaintiff's claims based on alleged
5   misrepresentations fail for the separate and independent reason that, as a matter of law, none of
6   the alleged statements or omissions are "likely to deceive" reasonable consumers.  In his
7   opposition, Plaintiff ignores these arguments entirely.  The alleged statements on *Halo 3*
8   packaging that it is "[o]nly on Xbox 360" and "[f]or exclusive use on the Xbox 360 in the NTSC
9   format," Compl. ¶ 25, do not support claims under the UCL because no reasonable consumer
10  would construe them as representing that *Halo 3* would perform to a particular standard, let alone
11  that it would never freeze, lock up, crash or otherwise malfunction in any way.  As any
12  reasonable consumer knows, these representations simply mean that the game is designed for use
13  "only" and "exclusively" on the Xbox 360 console, as opposed to other video game consoles,
14  such as the Nintendo Wii or Sony PlayStation.  Any representations relating to the operability of
15  the game are found in the warranty covering the game, which Plaintiff notably fails to mention in
16  either the Complaint or his opposition to this motion.  The alleged failure to disclose that *Halo 3*
17  supposedly "freezes, locks up and/or crashes" when used on the Xbox 360 video game console
18  also does not support claims under the UCL because, as recognized in *Klein*, reasonable
19  consumers understand that products they purchase may malfunction and, therefore, are not
20  *deceived* when this occurs.

21      **B.**    <u>**Plaintiff's Warranty Claims Should Be Dismissed.**</u>

22          **1.**    **Plaintiff's Claims Fail Because He Does Not Allege That He Gave Timely Notice Of The Alleged Breach.**
23

24        Plaintiff argues that the "California Court of Appeals [sic] has squarely held that a
25  plaintiff suing under the Song-Beverly Act need not give the defendant manufacturer(s) any
26  particular notice of the breach," again relying on *Mocek v. Alpha Leisure, Inc.*, 114 Cal. App. 4th
27  402. Opp. at 6.  Plaintiff's reliance on *Mocek* is again misplaced.  The issue in *Mocek* had
28  nothing to do with whether the Song-Beverly Act requires pre-suit notice (indeed, the *Mocek*

4556141.1                                          - 4 -                  REPLY MEMORANDUM
                                                                                CASE NO. 07 CV 2209 L (WMC)

plaintiff *did* provide notice of the alleged breach to the defendant). Rather, the issue was whether a plaintiff must allow a manufacturer an opportunity to *repair* a defective product before suing under the Song-Beverly Act.

Defendants seek pre-suit *notice* for the very reasons pre-suit notice is required: to afford a defendant the opportunity to mitigate losses and avoid unnecessary litigation. *See, e.g.*, *Pollard v. Saxe & Yolles Dev. Co.*, 12 Cal. 3d 374, 380 (1974) (notice requirement is "based on a sound commercial rule designed to allow the defendant opportunity for repairing the defective item, reducing damages, avoiding defective products in the future, and negotiating settlements"). Were Plaintiff to provide Defendants with the requisite pre-suit notice, Defendants may, under the terms of Microsoft's express 90-day warranty covering Plaintiff's video game, offer to repair, replace or provide Plaintiff with a refund.[1]

The Song-Beverly Act does not supersede the Commercial Code's requirement of pre-suit notice before bringing a breach of warranty claim. *See Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295 n. 2 (1995) (The Song-Beverly Act "supplements, rather than supersedes, the provisions of the California Uniform Commercial Code by broadening a consumer's remedies to include costs, attorney's fees, and civil penalties."); Cal. Civil Code § 1790.3 ("The provisions of this chapter shall not affect the rights and obligations of parties determined by reference to the Commercial Code except that, where the provisions of the Commercial Code conflict with the rights guaranteed to buyers of consumer goods under the provisions of this chapter, the provisions of this chapter shall prevail."). Here, Plaintiff fails to articulate any such conflict, nor can he. Requiring a consumer to give notice of a defect before filing suit to facilitate a potential resolution by which he or she may obtain the same remedies available under the Act does not conflict with any term of the Song-Beverly Act and, indeed, is

---

[1] At bottom, Plaintiff asks this Court to strip the pre-suit notice requirement from the Song-Beverly Act so that he has standing to bring a class action lawsuit. But Rule 23 does not allow a plaintiff to modify substantive statutory rights, such as the pre-suit notice requirement under the Commercial Code. As the Ninth Circuit explained in *In re Hotel Telephone Charges*, 500 F.2d 86, 90 (9th Cir. 1974), "enlargement or modification of substantive statutory rights by procedural devices is clearly prohibited by the [federal] Enabling Act that authorizes the Supreme Court to promulgate the Federal Rules of Civil Procedure."

entirely consistent with its remedial purpose. Because Plaintiff failed to give Defendants pre-suit notice of the alleged breach, his implied warranties claims should be dismissed.

### 2. Plaintiff's Claims For Breach of the Implied Warranty of Fitness for a Particular Purpose Fail Because Plaintiff Does Not Allege A "Particular Purpose" Or That He Purchased *Halo 3* From Defendants.

Plaintiff argues that he properly pled a claim for breach of the implied warranty of fitness for a particular purpose because he need not plead a "particular purpose" that is distinct from the "ordinary purpose" for which one purchases a video game. Opp. at 6. Plaintiff's argument is without merit.

*First*, the requirement that a plaintiff allege a "particular purpose" for a product that is distinct from its "ordinary use" conflicts with no provision of the Song-Beverly Act. Indeed, the unpublished decision on which Plaintiff improperly relies, *Townsend v. Boat and Motor Mart*, Nos. A112623, A114267, 2007 WL 1252619 (Cal. Ct. App. May 1, 2007), makes this very point. *Id.* at *8 (explaining difference between implied warranty of merchantability and implied warranty of fitness for a particular purpose and stating that the "implied warranty that goods are fit for a *particular* purpose arises where the seller has reason to know that the buyer requires the good for a particular purpose and is relying on the seller's skill and judgment to select and furnish a suitable good.") (emphasis in original). Thus, the authority on which Defendants rely is not, as Plaintiff suggests, "irrelevant." Opp. at 6.

*Second*, Plaintiff's reliance on *Townsend* for the proposition that a "particular" and "ordinary" purpose may be identical violates the California Rules of Court. Under Rule 8.1115. of the California Rules of Court, "an opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published *must not be cited or relied on by a court or a party in any other action*" (emphasis added). The *Townsend* opinion was not certified for publication and should not have been cited to this Court. Thus, Plaintiff cites no authority for the proposition that a "particular purpose" may be identical to the "ordinary purpose."[2]

---

[2] In any event, Plaintiff's reliance on *Townsend* is misplaced. First, the court did not address the issue of whether the plaintiff properly pled a claim for breach of the implied warranty of fitness

1  In any event, Plaintiff's theory makes no sense. A claim for breach of the implied warranty of fitness for a "particular" purpose is different from a breach of the implied warranty of merchantability precisely because a plaintiff used a product for a "particular" purpose that is distinct from the ordinary purpose for which the product is used. *See Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295 n.2 (1995) ("A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used . . . go to uses which are customarily made of the goods in question."). In *Andrade v. Pangborn Corp.*, No. C 02-3771 PVT, 2004 WL 2480708 (N.D. Cal. Oct. 22, 2004), for example, the court rejected a claim for breach of implied warranty of fitness for a particular purpose where the plaintiff failed to offer evidence that the product was intended to be put to a use which was peculiar to the nature of its business as compared to the ordinary purposes for which the product was used. *Id.* at *25. Here, Plaintiff's failure to allege a "particular" purpose for which he intended to use his copy of *Halo 3* (as distinct from the ordinary purpose for which video games are used) renders his claim defective as a matter of law.

Finally, Plaintiff's claim for breach of the implied warranty of fitness for a particular purpose fails for the separate and independent reason that he does not allege that he purchased *Halo 3* from Defendants. As set forth in the opening brief, this is fatal to his claim under the express terms of the Song-Beverly Act. Plaintiff does not—and cannot—address this deficiency in his opposition because he admits in the Complaint that he purchased his copy of *Halo 3* from GameStop, not Microsoft or Bungie. Accordingly, Plaintiff cannot state a claim for breach of the implied warranty of fitness for a particular purpose against either defendant.

---

for a particular purpose. Second, a fair reading of the opinion suggests that plaintiff did, in fact, allege the requisite "particular purpose." There, the plaintiff purchased a 30-foot sport-fishing boat. The plaintiff "arranged for a 'test drive'" of the boat. *Townsend at *2.* During a sea test, the sellers made specific misrepresentations about the boat and plaintiff testified that "he relied upon these representations in buying the boat." *Id.* Here, of course, Plaintiff alleges no negotiations between him and Defendants such that they had reason to know of some "particular purpose" for which Plaintiff intended to use the video game.

### III. CONCLUSION

For the reasons stated above, Microsoft and Bungie respectfully request that the Complaint, and all claims alleged therein, be dismissed.

DATED: February 29, 2008                    MUNGER, TOLLES & OLSON, LLP


By: _____*/s/ Rosemarie T. Ring*_____
    ROSEMARIE T. RING
    rose.ring@mto.com

Attorneys for Defendants
MICROSOFT CORPORATION and
BUNGIE, L.L.C.